UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| J.E. NOVACK CONSTRUCTION CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:11-CV-800 CAS |
| ) | |
| APEX CONTRACTING, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant RG Financial, LLC's motion for summary judgment. The motion is unopposed. No party has filed a memorandum in opposition, and the time to do so has expired. For the following reasons, defendant's motion for summary judgment is granted.

### *I.  Procedural History*

The above-captioned case is an interpleader action filed pursuant to 28 U.S.C. § 1335. Plaintiff J.E. Novack Construction Company ("Novack") filed an interpleader complaint in which it alleged that it is a mere stakeholder of funds totaling Forty-Nine Thousand Five Hundred Sixty-Eight Dollars and Forty-Five Cents ($49,568.45) (herein referred to as the "Novack Fund"). Plaintiff alleges there are competing claims to these funds, and it named as interpleader defendants the following parties: Apex Contracting, Inc. ("Apex"); RG Financial, LLC ("RG"); Greater St. Louis Construction Laborers Welfare Fund, Construction Laborers Pension Trust of Greater St. Louis, and AGC-Eastern Missouri Laborers' Joint Training Fund (the "Laborers Funds"); Brandon Flinn, Raymond Linehan, Andrew Orlando, Gary Elliot, David Gillick, James Moll, Tom Daniels, Jeff Schmidt, Jerry Fleming, Jay Schultehenrich, Mike Benigno, Norman Merlo, Kenneth Karsten,

Richard McLaughlim, Jeffrey O'Connell, Pasquale Lopiccolo, Don Willey, Joseph Beetz, William L. Luth, Donald Grant, Joseph Leritz, Robert Fritz, Larry Bloomer, Pryor Perri, Richard McGuire, John Morgan, John Mulligan, Robert Wesolich, Francis R. Wojehowski, Cliff Land, and John J. Smith, Sr. (Trustees of the Laborers Funds"); Local Union Nos. 43-53-110, Laborers International Union of North America, and AFL-CIO (the "Laborers Unions"); and International Union of Operating Engineers, Local 513 (the "Operators Union").  On June 20, 2011, Local Union 513 Annuity Fund, Local Union 513 Health and Welfare Fund, Local Union 513 Joint Apprenticeship Training Fund, Local Union 513 Pension Fund, Local Union 513 Supplemental Vacation Fund (the "Operators Funds"); and Gary Broccard ("Trustee of the Operators Funds") filed a motion to intervene as interpleader defendants.  The Court granted the motion to intervene.

According to the interpleader complaint, Novack entered into a building contract with defendant Apex.  Under the terms of the contract, Novack agreed to pay Apex for work, labor and materials in connection with a construction project.  Novack owed Apex the sum of $49,568.45 under the contract.  At some point in time, Novack received notice that defendant RG was asserting a claim against the money due and owing Apex.  Novack also received a notice of garnishment from the Laborers Unions, the Laborers Funds and the Trustee of the Laborers Funds for the money due and owing under the contract.  Novack also alleged in its interpleader complaint that the Operators Union may have provided work, labor, or services to Apex on the construction project covered by the contract and therefore, the Operators Union may have a claimsagainst the balance Novack owes to Apex under the contract.

Novack alleges that it does not have an interest in the Novack Fund, and that it is a mere stakeholder in this action.  It asks that the Court declare Novack to be forever released and

discharged from all further liability relating to the Novack Fund, and that it be dismissed from the suit and be allowed to recover its attorney's fees and costs. Novack filed a separate motion to deposit the amount of the Novack Fund, $49,568.45, into the Court's registry. The motion was granted and the money was deposited with the Court in an interest bearing account.

Defendants RG, the Laborers Union, the Laborers Funds, and the Trustee of the Laborers Funds, the Operators Union, the Operators Funds, and the Trustee of the Operators Funds all filed answers to the complaint. Although it was properly served, Apex never responded to or filed an answer to the complaint. Novack moved for the clerk's entry of default against Apex, which was granted. No party, however, has moved for default judgment against Apex.

In the motion presently before the Court, RG claims that it is entitled to the entire amount of the Novack Fund. RG argues that while Apex is indebted to all the defendants in this case, RG is the only defendant that has a perfected security interest in the Novack Fund, which is superior to the claims of all the other defendants. Therefore, RG argues, as the holder of a first priority security interest, it is entitled to summary judgment. None of the other defendant responded to RG's motion for summary judgment, and the time to do so as elapsed.

## II.  Summary Judgment Standard

The standard applicable to summary judgment motions is well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Ia. v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly

establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence he or she must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 quoting Anderson, 477 U.S. at 248. A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

In passing on a motion for summary judgment, the court should not weigh evidence or attempt to determine the truth of a matter. Rather, the court must simply determine whether a genuine issue of material fact exists. Bassett v. City of Minneapolis, 211 F.3d 1097, 1107 (8th Cir. 2000).

*III.  Findings of Fact*

Local Rule 4.01(E) provides, with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.  E.D. Mo. L.R. 4.01(E).

In support of its motion for summary judgment, RG submitted a Statement of Uncontroverted Material Facts ("SUMF") with citations to the record.  RG attached declarations and exhibits to its SUMF.  The opposing parties, however, did not respond to RG's SUMF or provide the Court with a statement of material facts as to which they contend a genuine dispute exists.  Accordingly, these parties have not met the requirements of Local Rule 4.01(E), and they are deemed to have admitted all facts in RG's SUMF.  Deichmann v. Boeing Co., 36 F. Supp.2d 1166, 1168 (E.D.Mo. 1999), aff'd, 232 F.3d 907 (8th Cir. 2000), cert. denied, 531 U.S. 877. Cf. Northwest Bank & Trust Co. v. First Ill. Nat'l Bank, 354 F.3d 721, 725 (8th Cir. 2003) (holding that the district court did not abuse its discretion by applying local rules that excluded some of the material facts offered in opposition to a motion for summary judgment).

With this in mind, Court makes the following findings of fact:

RG is the successor to the Federal Deposit Insurance Corporation ("FDIC") as receiver of Corn Belt Bank & Trust Company ("Corn Belt Bank").  On April 1, 2008, Corn Belt Bank issued the following loans to defendant Apex (hereinafter the "Apex Loans"):

5

- Loan No. 30037225, in the amount of $214,979.14, with monthly payments of $4,282.80, and a maturity date of April 1, 2013;

- Loan No. 30037226, in the amount of $232,983.15, with monthly payments of $3,545.47, and a maturity date of April 2, 2015; and

- Loan No. 30037227, in the amount of $100,000, with payment of principal and interest in full due on the maturity date of April 1, 2009.

In connection with the Apex loans, Corn Belt Bank and Apex also executed a Security Agreement covering all obligations, debts and liabilities, plus interest thereon. On May 6, 2008, Corn Belt Bank filed a UCC Financing Statement ("Financing Statement") with respect to the Apex Loans. The Security Agreement and the Financing Statement state that Corn Belt Bank has a security interest in all of Apex's accounts receivable, including future accounts receivable. In September 2008, Apex and Corn Belt Bank executed an agreement modifying Loan No. 300037227 ("Loan Modification") and increasing the amount of that loan to a total of $200,000.00 in principal. The April 1, 2009 maturity date was not amended.

On February 13, 2009, Corn Belt Bank was closed by the Division of Banking, Illinois Department of Regulation, and the FDIC was appointed as receiver of Corn Belt Bank (the "Receiver"). On April 1, 2009, Loan No. 300037227 matured, but Apex failed to remit full and final payment of that loan. On May 6, 2009, the FDIC sent a Notice of Default to Apex for the balance of $210,189.04 then remaining on Loan No. 300037227. Apex failed and refused to make full and final payment on the Loan No. 300037227. Apex also failed to remit monthly payments on Loan Nos. 300037225 and 300037226.

On or about August 6, 2009, RG purchased the Apex Loans held by Corn Belt Bank from the FDIC. The FDIC filed an amendment of the Financing Statement ("Amended Financing

6

Statement") on June 22, 2010, assigning all its right, title and interest in the Financing Statement to RG.

Apex has other creditors claiming that Apex owes unpaid debts. The Laborers Unions, the Laborers Funds, and the Trustees of the Laborers Funds first filed suit against Apex in the Federal District Court for the Eastern District of Missouri on February 4, 2010, styled: Greater St. Louis Construction Laborers Welfare Fund, et al. v. Apex Contracting, Inc., No. 4:10-CV-206 CAS ("Apex I Litigation"). The Laborers Unions, the Laborers Funds, and the Trustees of the Laborers Funds alleged in their complaint that Apex was delinquent in its contribution to the Laborers Funds. The parties agreed to a consent judgment in the Apex I Litigation in the amount of $172,939.29, and the Court entered an order adopting the consent judgment on September 27, 2010.

The Laborers Unions, Laborers Funds, and Trustees of the Laborers Funds filed a second suit against Apex in the Federal District Court for the Eastern District of Missouri, styled: Greater St. Louis Construction Laborers Welfare Fund, et al. v. Apex Contracting, Inc., No. 4:11-CV-405 CDP ("Apex II Litigation"). Again the Laborers Unions, the Laborers Funds, and the Trustees of the Laborers Funds alleged Apex was delinquent in its contributions to the Laborers Funds. On April 20, 2011, the Court entered a default judgment against Apex in the Apex II Litigation for the amount of $15,720.05.

Sometime prior to these two law suits, plaintiff Novack entered into a contract with Apex under which Apex was to provide work, labor, and materials in connection with a post office building located in Sappington, Missouri. Novack became indebted to Apex for the work Apex performed under the contract in the amount of at least $49,568.45. This amount represents the

7

Novack Fund, which is the money currently in dispute. Apex completed its work for Novack and the company was entitled to payment of the Novack Fund by at least November 1, 2010.

On February 24, 2011, the Laborers Unions, the Laborers Funds, and the Trustees of the Laborers Funds sent a notice of garnishment to Novack in association with their judgments from the Apex I and II Litigations, asserting the right to receive payment of the Novack Fund. On March 30, 2011, RG sent a Notification of Assignment to Novack, asserting the right to receive payment of the Novack Fund.

The Operators Union, Operators Funds and Trustee of the Operators Funds claim Apex was obligated to make contributions to the Operators Funds in accordance with the terms of a collective bargaining agreement it had with the Operators Union as well. The Operators Union, Operators Funds, and Trustee of the Operators Funds, however, have not previously adjudicated their claims against Apex in any lawsuit filed by them against Apex. They do not have a judgment lien.

### *IV. Discussion*

In its motion for summary judgment, RG argues that it is entitled to the entire amount of the Novack Fund because it has a perfected security interest in the Novack Fund that is superior to any judgment lien or claim the other defendants may have. Based on the record before it, the Court concurs that RG has a security interest in the Novack Fund that is superior to the claims of the other defendants.

### A.     RG Has a Perfected Security Interest in the Funds

In Missouri[1] a creditor can secure its right to repayment of a debt by obtaining a security interest in collateral held by its debtor, including accounts receivable. See generally, Mo. Rev. Stat. § 400.9-203; George W. Ultch Lumber Co. v. Hall Plastering, Inc., 477 F.Supp. 1060, 1064–65 (W.D. Mo. 1979); Index Store Fixture Co. v. Farmers' Trust Co., 536 S.W.2d 902, 904 (Mo. Ct. App. 1976).  In order for a security interest to attach to collateral, the creditor must satisfy three conditions: (1) the creditor and debtor must agree to create the security interest; (2) the creditor must give value to the debtor in consideration of the creation of the security interest; and (3) the debtor must have rights in the collateral.  Mo. Rev. Stat. § 400.9-203(b); Index Store Fixture Co., 536 S.W.2d at 904.

A valid security interest protects the creditor's rights against the debtor, but it does not necessarily protect the creditor's rights against third parties that may also have some claim against the same collateral.  Once a creditor has formed a valid security interest in collateral, the creditor can take further action to secure its interest as against third parties by perfecting its security interest. See generally, Mo. Rev. Stat. § 400.9-301, et seq.  In Missouri, a common method of perfecting a security interest is to file a financing statement covering the collateral in question.  Once the creditor has filed such a financing statement, the security interest is perfected and its rights to repayment from the collateral in question will generally trump the priority rights of any competing interest that

---

[1]This case is before the Court pursuant to the federal interpleader statute. See U.S.C. § 1335. Plaintiff Novack is a corporation organized and conducting business in Missouri.  Apex, the Laborers Unions, the Labors Funds, the Operators Union, and the Operators Funds do business in, have a place of business in, or otherwise reside in Missouri.  RG is an Indiana limited liability company conducting business in the state of Indiana. In its memorandum in support of summary judgment, RG argues it is entitled to Novack Fund under Missouri law.  RG does not state why Missouri law applies to its security interest, but no other party disputes that it does.

attaches or is subsequently perfected. Mo. Rev. Stat. 400.9-322(a)(1); George W. Ultch Lumber Co., 477 F.Supp. at 1064–65.

Based on the record before it, the Court finds that RG has a valid security interest in Apex's accounts receivable – which includes the Novack Fund – because all three conditions for the creation of a security interest were met. First, on April 1, 2008, Corn Belt Bank and Apex agreed to create a security interest in the accounts receivable, as evidenced by the Security Agreements. All of Corn Belt Bank's rights, title and interest in the Security Agreements were assigned to RG by the FDIC, as Receiver for Corn Belt Bank. Second, Apex received value in exchange for the Security Agreements in the form of the loans it received from Corn Belt Bank. Finally, Apex had a right in the collateral, the accounts receivable, once it performed work and was entitled to payment. The Court finds it is undisputed that RG has an enforceable security interest in Apex's accounts receivables, of which the Novack Fund is a part.

The Court also finds RG's security interest in the Novack Fund has been properly perfected. Corn Belt Bank perfected its security interest in Apex's accounts receivables on May 6, 2008, when it filed the UCC Financing Statement identifying Apex's accounts receivables as collateral for the Apex Loans. See e.g., Mo. Rev. Stat. § 400.9-301; George W. Ultch Lumber Co., 477 F.Supp. at 1064–65. On June 22, 2010, Corn Belt Bank's Financing Statement was transferred to RG by the FDIC, as Receiver for Corn Belt Bank. Both the Security Agreement and the Financing Statement provide that the security interest in Apex's accounts receivables includes future accounts receivable. The timing of RG's perfected security interest, as to other creditors of Apex, dates back to the original filing by Corn Belt Bank on May 6, 2008. See Mo. Rev. Stat. § 400.9- 310(c) ("If a secured party assigns a perfected security interest [ ], a filing under this article is not required to continue

the perfected status of the security interest against creditors of and transferees from the original debtor.")  RG's security interest in the Novack Fund was perfected at the latest on or before November 1, 2010, when Apex was first entitled to receive the Novack Fund.  Chicago Dist Council of Carpenters Pension Fund v. Tessio Constr. Co., 2003 WL 21312664, at *3 (N.D. Ill. June 4, 2003) (holding, "a security interest in after-acquired accounts receivable is perfected – assuming the appropriate UCC statement has already been filed – once the debtor completes the work and is entitled to collect payment for that work.").  See also Shawnee State Bank v. United States, 735 F.2d 308, 310 (8th Cir. 1984) (applying Missouri law, the Eight Circuit found that upon compliance with applicable filing requirements, secured creditors acquired a perfected security interest in accounts receivable as the debtor earned them).

  **B.**  **RG's perfected security interest in the Novack Fund has priority over the Laborers Union, Laborers Funds, and the Trustees of the Laborer Funds' judgment liens**

  Defendant RG is entitled to summary judgment because it has a perfected security interest in the Novack Fund, which has priority over other third-party claims, including the Laborers Union the Laborers Funds and the Trustees of the Laborers Funds' judgment liens.

  As an alternative to a security interest in a debtor's collateral, a creditor may also attempt to secure repayment of a debt by filing a lawsuit against the debtor and obtaining a judgment lien for the unpaid debt.  A judgment lien begins when the court enters final judgment.  See Missouri Rule of Civil Procedure 74.08 ("the lien of a judgment commences upon entry of the judgment"); First Am. Title Ins. Co. v. Birdsong, 31 S.W.3d 531, 536 (Mo. Ct. App. 2000).  However, a judgment lien is not perfected as to accounts receivable until the judgment creditor serves a notice of garnishment upon the funds owed to the judgment debtor.  Vittert Const. & Inv. Co. v. Wall

Covering Contractors, Inc., 473 S.W.2d 799, 804 (Mo. Ct. App. 1971). See also Dugan v. Missouri Neon & Plastic Advertising Co., 472 F.2d 944, (8th Cir. 1973) (a judgment lien becomes a perfected lien upon intangible property through issuance of a garnishment). The judgment liens of the Laborers Unions, the Laborers Funds, and the Trustees of the Laborers Funds were perfected as to the Novack Fund on February 24, 2011, when Novack was provided with a notice of garnishment. RG's security interest in the Novack Fund was perfected at the latest in November 2010, when Apex was entitled to payment under the contract of the Novack Fund. Shawnee State Bank, 735 F.2d at 310.

  A creditor's perfected security interest in a debtor's accounts receivable has priority over a judgment creditor's judgment lien when the security interest was perfected prior to the perfection of the judgment lien. See Slodov v. United States, 436 U.S. 238, 257 n. 22 (1978) ("Under the UCC, a perfected security interest is superior to a judgment lien creditor's claim in the property."); Sperry Corp. v. Farm Implement, Inc., 760 F.2d 196, 198 (8th Cir. 1985) ("the holder of a perfected security interest takes priority over a subsequent lien creditor under the general code principle that gives priority to the earliest perfected security interest."); Chicago Dist. Council of Carpenters Pension Fund, 2003 WL 21312664 at *3 (where a "Bank's security interest in any accounts receivable . . . was perfected prior to the entry of judgment against the Debtor . . . the Bank's perfected security interest is superior to the Pension Fund's judgment lien against the Debtor."); Darr v. Brennan Cattle Co., 658 S.W.2d 906, 908–09 (Mo. Ct. App. 1983) (holder of security interest perfected by filing financing statement trumps holder of judgment lien where filing of financing statement occurs prior to entry of judgment). See also G.E. Supply, a Div. of General Elec. Co. v. Hampton-Tilley Assocs., Inc., 866 F.Supp. 431, 432 (E.D. Mo. 1994) (bank's right to setoff from debtor's account gained

12

through perfected security interest has priority over rights of judgment creditor who did not perfect its security interest until after right to setoff arose).

In this case, RG perfected security interest in the Apex Funds has priority to the Laborers Union, the Laborers Funds, and the Trustees of the Laborers Funds' judgment liens. The Laborers Union, the Laborers Funds and the Trustee of the Laborers Funds were unsecured creditors of Apex until they received their judgment against Apex, and they did not perfect their judgment liens as to the Novack Fund until February 24, 2011, when they first sent a notice of garnishment to Novack, which was after RG had perfected its security interest in the Novack Fund. Vittert Const. & Inv. Co., 473 S.W.2d at 804. RG's claim to the Novack Fund is superior to the claim of the Laborers Union, the Laborers Funds, and the Trustees of the Laborers Funds because its security interest in Apex's accounts receivable was perfected prior to the perfection of the judgment liens. Slodov, 436 U.S. at 257 n. 22; Sperry Corp., 760 F.2d at 198; Chicago Dist. Council of Carpenters Pension Fund, 2003 WL 21312664 at *3; Darr, 658 S.W.2d at 908–09.

    **C.**    **RG's perfected security interest in the Novack Fund has priority over the unsecured claims of the Operators Union, the Operators Funds, and the Trustee of the Operators Funds.**

As for the Operators Union, the Operators Funds, and the Trustee of the Operators Funds, these claimants have unsecured claims against Apex for unpaid fringe benefit contributions. According to the record, their claims have not been reduced to a judgment against Apex, and they do not have a secured interest in the funds. Thus, their claim to the Novack Fund is not only subordinate to RG's claim, but it is also subordinate to the claim of the Laborers Union, the Laborers Funds and the Trustees of the Laborers Funds. In sum, the Court finds based on the record before it that there are no disputes of material fact and RG is entitled to summary judgment as a matter of

law. The Court will award RG the Novack Fund to satisfy a portion of Apex's outstanding debt to RG.

### V. Attorney's Fees

In its motion for the clerk's entry of default, Novack asked in addition to the entry of default against Apex, that the Court dismiss it from the suit as a mere stakeholder and award it attorney's fees in the amount of $6,000.00. Novack did not file a separate motion for dismissal or for its attorney's fees. Defendant RG did not oppose the motion for entry of default but it did oppose the amount Novack was requesting in fees. RG argues that the amount requested was not supported by the documentation and that it was excessive for a simple interpleader action. No other party to this dispute responded to the request. The Court will construe Novack's request as a motion for dismissal and for attorney's fees. It is undisputed that Novack is a mere stakeholder and should be dismissed. The Court also finds Novack is entitled to its attorney's fees and the cost of the filing fee. It is within the Court's discretion to award reasonable attorney's fees to a disinterested stakeholder in an interpleader action from funds deposited in the Court registry. See Millers Mut. Ins. Ass'n v. Wassall, 738 F.2d 302, 304 (8th Cir. 1984). The amount of the fee should be "modest, both in view of the relatively routine services involved and in order not to deplete the fund, which belongs to the claimants, not the stakeholder." Equifax, Inc. v. Luster, 463 F. Supp. 352 (E.D. Ark. 1978), aff'd sub nom Arkansas Louisiana Gas Co. v. Luster, 604 F.2d 31 (8th Cir. 1979), cert. denied, 445 U.S. 916 (1980). Thus, any award should be limited to compensation for those services strictly related to the interpleader itself. Id.

Novack seeks attorney's fees in the sum of $6,000.00 for 30 hours of work at a rate of $200.00 per hour, and $843.93 in costs. When it opposed Novack's request for attorney's fees, RG

noted that Novack had not filed documentation in support of its request for fees. Novack filed a reply memorandum, to which it attached detailed billing records.

The Court has carefully reviewed the itemized statements submitted by Novack. Upon review of the statements, the Court concludes that the attorney's fees incurred by Novack are reasonable, relate solely to the interpleader, and should be paid in full out of the interpleader funds. The Court will also allow Novack reimbursement for $350.00$^2$ for the filing fee. The Court concludes that the remaining disbursements for expenses such as copying, travel, and process server fees should be disallowed.

### *VI. Conclusion*

In sum, the Court finds there are no disputes of material facts and as a matter of law RG is entitled to summary judgment. The Court finds RG has a perfected security interest in the Novack Fund. The Court further finds RG 's interest in the Novack Fund is superior to those of the other claimants in this suit. The Court further finds Novack is a disinterested stakeholder, and that the company is entitled to recover from the Novack Fund the attorney's fees it incurred in filing this suit, as well as the filing fee.

Accordingly,

**IT IS HEREBY ORDERED** that in accordance with this Memorandum and Order, J.E. Novack Construction Co. is a mere stakeholder of the Novack Fund, and J.E. Novack Construction Co. is hereby discharged from all liability related to the Novack Fund.

---

$^2$In Novack's "Detail Cost Transaction File List," the filing fee is listed as being $650.00. The Court assumes this was merely a typographical error, as Novack only paid the Court $350.00 for the filing fee.

**IT IS FURTHER ORDERED** that J.E. Novack Construction Co. is hereby **DISMISSED.**

**IT IS FURTHER ORDERED** that J.E. Novack Construction Co. is awarded attorney's fees in the amount of Six Thousand Dollars ($6,000.00), and costs in the amount of Three Hundred Fifty Dollars ($350.00), for a total amount of Six Thousand Three Hundred Fifty Dollars ($6,350.00), which shall be deducted from the Novack Fund.

**IT IS FURTHER ORDERED** that RG Financial, LLC's motion for summary judgment is **GRANTED.** [Doc. 63]

**IT IS FURTHER ORDERED** that RG Financial LLC is entitled to judgment in the amount of the Novack Fund, together with all accrued interest thereon, less Six Thousand Three Hundred Fifty Dollars ($6,350.00), and less any applicable administrative fees.

**IT IS FURTHER ORDERED** that the claims of Apex Contracting, Inc., Greater St. Louis Construction Laborers Welfare Fund, Construction Laborers Pension Trust of Greater St. Louis, AGC-Eastern Missouri Laborers' Joint Training Fund, Brandon Flinn, Raymond Linehan, Andrew Orlando, Gary Elliot, David Gillick, James Moll, Tom Daniels, Jeff Schmidt, Jerry Fleming, Jay Schultehenrich, Mike Benigno, Norman Merlo, Kenneth Karsten, Richard McLaughlim, Jeffrey O'Connell, Pasquale Lopiccolo, Don Willey, Joseph Beetz, William L. Luth, Donald Grant, Joseph Leritz, Robert Fritz, Larry Bloomer, Pryor Perri, Richard McGuire, John Morgan, John Mulligan, Robert Wesolich, Francis R. Wojehowski, Cliff Land, John J. Smith, Sr., Local Union Nos. 43-53-110, Laborers International Union of North America, AFL-CIO, International Union of Operating Engineers, Local 513, Local Union 513 Annuity Fund, Local Union 513 Health and Welfare Fund, Local Union 513 Joint Apprenticeship Training Fund, Local Union 513 Pension

Fund, Local Union 513 Supplemental Vacation Fund, and Gary Broccard against the Novack Fund are **DISMISSED.**

**IT IS FURTHER ORDERED** that one week from the date of this Memorandum and Order, RG Financial, LLC shall file with the Court, pursuant to Local Rule 13.04(D)(2), a proposed order for disbursement of the Novack Fund.

 

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this   17th   day of September, 2012.